**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **Appellee** | * | |
| **v.** | * | **Criminal No:  13-328-PJM** |
| **KIRK YAMATANI** | * | |
| **Appellant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW
IN SUPPORT OF MR. YAMATANI'S APPEAL**

July 15, 2013

Steven Hale Levin
Fed. Bar No. 28750
Levin & Curlett LLC
250 West Pratt Street, Suite 1300
Baltimore, Maryland 21201
Phone: (410) 545-5871
Facsimile: (410) 685-2222
Email: slevin@levincurlett.com

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 4

STATEMENT OF JURISDICTION.............................................................................4

STATEMENT OF THE ISSUES   ..............................................................................4

STATEMENT OF THE CASE......................................................................................6

STATEMENT OF FACTS .............................................................................................6

ARGUMENT ...................................................................................................................6

   I.  The Waiver of Appeal Provision Does Not Preclude This Appeal ......................6

      A.  Mr. Yamatani Did Not Knowingly and Intelligently Waive His Right to
Appeal  ..........................................................................................................................6

         1.  Standard of Review...................................................................................6

         2.  Discussion ...............................................................................................7

      B.  Rule 35(a) Authorizes This Appeal.............................................................10

      C.  The Violation of Mr. Yamatani's Constitutional Rights to Due
Process Permit this Appeal ........................................................................................11

   II.  The Sentencing Court Committed Error ..........................………………………12

         1.  Standard of Review.................................................................................12

         2.  Discussion ................................................................................................12

      A.  The Sentencing Court Committed Procedural Error...................................14

         1.  The Sentencing Court Did Not Calculate The Guidelines.......................15

         2.  The Sentencing Court Failed to Consider the 3553(a) Factors...............16

         3.  The Sentencing Court Failed to Explain its Chosen Sentence................24

         4.  The Sentencing Court Considered Inaccurate Information ....................26

         5.  These Errors Were Not Harmless ...........................................................30

      B.  The Sentencing Court Committed Substantive Error..................................30

      1. Standard of Review ................................................................................................. 30

      2. Discussion .......................................................................................................... 32

  III.   The Case Should Be Remanded to a New Sentencing Court ........................................ 33

CONCLUSION ............................................................................................................... 34

REQUEST FOR ORAL ARGUMENT ..................................................................................... 34

## INTRODUCTION

Comes now the Appellant, Kirk Yamatani, through undersigned counsel, and appeals his sentence pursuant to Title 18 USC § 3742, Fed.R.Crim.P. 35(a), Fed.R.Crim.P. 58(g)(2), Local Rule 302, the United States Constitution, and all other applicable rules and statutes. In support thereof, Mr. Yamatani states as follows:

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a criminal case, entered against Kirk Yamatani on June 21, 2013, by United States Magistrate Judge Charles B. Day. District court jurisdiction was based upon 18 U.S.C. § 3231. Magistrate court jurisdiction was in conformity with 18 U.S.C. § 3401, Fed. R. Crim. P. 58, and Local Rule 301(3). Mr. Yamatani timely noticed this appeal on June 19, 2013, pursuant to Fed. R. Crim. P. 58(g)(2). On July 3, 2013, Mr. Yamatani filed a supplemental notice of appeal.

## STATEMENT OF THE ISSUES

**I. DID MR. YAMATANI KNOWINGLY AND INTELLIGENTLY WAIVE HIS RIGHT TO APPEAL THE IMPOSED SENTENCE WHEN:**

**A) THE SENTENCING COURT FAILED TO ADVISE MR. YAMATANI ABOUT THE APPEAL WAIVER PROVISION IN THE PLEA AGREEMENT;**

**B) THE SENTENCING COURT FAILED TO QUESTION MR. YAMATANI ABOUT HIS UNDERSTANDING OF THE WAIVER PROVISION IN THE PLEA AGREEMENT;**

**C) THE RECORD DOES NOT OTHERWISE INDICATE THAT MR. YAMATANI UNDERSTOOD THE WAIVER PROVISION; AND**

**D) THE WAIVER PROVISION ARTICULATED BY THE GOVERNMENT DURING THE PLEA COLLOQUY PERMITTED AN "APPEAL FOR A SENTENCE ABOVE THE RANGE PROVIDED FOR BY OFFENSE LEVEL 10," AND THE**

**SENTENCE IMPOSED IN THIS CASE WAS ABOVE OFFENSE LEVEL 10.**

**II.     DID THE SENTENCING COURT COMMIT PROCEDURAL ERROR:**

> **A)   WHEN IT FAILED TO CALCULATE THE GUIDELINES BEFORE IMPOSING SENTENCE;**
>
> **B)   WHEN IT FAILED TO CONSIDER THE SENTENCING FACTORS UNDER TITLE 18 USC SECTION 3553(a);**
>
> **C)  WHEN IT FAILED TO EXPLAIN ITS CHOSEN SENTENCE; AND**
>
> **D)  WHEN IT CONSIDERED INACCURATE INFORMATION BEFORE IMPOSING THE SENTENCE.**

**III.   DID THE SENTENCING COURT COMMIT SUBSTANTIVE ERROR.**

**IV.    SHOULD THE CASE BE REMANDED TO A DIFFERENT SENTENCING JUDGE TO PROMOTE THE PERCEPTION OF A FAIR SENTENCING IN LIGHT OF THE FOLLOWING:**

> **A)   THE SENTENCING COURT COMPARED THE MISDEMEANOR CHARGE OF SUBMITTING A FALSE WRITING WITH ARMED ROBBERY;**
>
> **B)   THE SENTENCING COURT STATED THAT RESTITUTION PAYMENT WAS NOT ITS CONCERN (Tr. 6/19/13, p. 17);**
>
> **C)   THE SENTENCING JUDGE READ INACCURATE INFORMATION THAT HAD BEEN WITHDRAWN BY THE GOVERNMENT AND STATED THAT "I HAVE DELIBERATELY DIVORCED MY KNOWLEDGE OF THAT *AS BEST I CAN*." (emphasis added);  AND**
>
> **D)    THE SENTENCING COURT ORDERED MR. YAMATANI TO BE TAKEN IMMEDIATELY INTO CUSTODY WITH NO ANALYSIS UNDER TITLE 18 USC § 3143, STATING "I TEND TO THINK WE TREAT WHITE-COLLAR CRIMINALS TOO SPECIAL." (TR. 6/19/13, p. 19).**

## STATEMENT OF THE CASE

On March 29, 2013, Mr. Yamatani was charged with a misdemeanor offense of submission of a false voucher, in violation of 18 U.S.C. § 1018.  On that same day, Mr. Yamatani entered a plea of guilty before a United States Magistrate Judge, waiving his right to be tried and sentenced before a United States District Judge.  (Tr. 4/30/13, p. 6.)(Exhibit 1).  On June 19, 2013, the sentencing court imposed the following sentence: imprisonment for 8 months, restitution in the amount of $14,000, a fine of $28,000.00, probation for one year as a condition of supervised release, and a special assessment of $25.00.  (Tr. 6/19/13, p. 18.)(Exhibit 2).  Mr. Yamatani timely noted his appeal on June 19, 2013.

## STATEMENT OF FACTS

Kirk Yamatani is a 39-year old husband and father of two children, ages 7 and 8. He has no prior criminal history and after 14 years of service, he voluntarily[1] resigned from his job as a Special Agent with the US Department of Commerce, after an otherwise unblemished and decorated career.  With respect to the offense conduct, Mr. Yamatani agrees with the factual stipulation set forth in the plea agreement. *United States v. Yamatani,* Case No.  13-149 CBD, ECF #5.

## ARGUMENT

**I.      The Waiver of Appeal Provision Does Not Preclude This Appeal.**

**A.      Mr. Yamatani Did Not Knowingly and Intelligently Waive His Right to Appeal.**

**1.      Standard of Review**

---

[1] Contrary to the sentencing court's assumption, Mr. Yamatani did not resign "under fire."  (Tr. 6/19/13, p. 16.) ("I don't have any paperwork, but I suspect it's a resignation under fire.")

[2] The plea agreement also permits an appeal based on clear error pursuant to Rule 35(a),

A defendant may waive the right to appeal if that waiver is knowing and intelligent. *United States v. Blick,* 408 F.3d 162, 169 (4th Cir. 2005). To determine whether a waiver is knowing and intelligent, a reviewing court examines the "totality of the circumstances, including the experience and conduct of the accused, as well as the accused's educational background and familiarity with the terms of the plea agreement." *United States v. General,* 278 F.3d 389, 400 (4th Cir. 2002) (internal quotation marks and citation omitted). The question of whether a defendant validly waived his right to appeal is an issue of law that is reviewed *de novo. United States v. Marin,* 961 F.2d 493, 496 (4th Cir.1992).  Usually, if the sentencing court fails to question the defendant about the waiver provision during the Rule 11 hearing and the record does not otherwise indicate that he understood the significance of the waiver, it is not knowing and intelligent. *See Marin,* 961 F.2d at 496.  Stated another way, a waiver is ineffective if the sentencing court fails to question the defendant about it, *United States v. Wessells,* 936 F.2d 165, 167-68 (4th Cir.1991), unless other evidence in the record shows that the waiver was informed and voluntary.  *United States v. Davis,* 954 F.2d 182, 186 (4th Cir.1992).

Significantly, the Fourth Circuit will "refuse to enforce an otherwise valid waiver if to do so would result in a miscarriage of justice."   *United States v. Johnson,* 410 F.3d 137, 151 (4th Cir.2005) (internal quotation marks and citation omitted).

**2.     Discussion**

Federal Rule of Criminal Procedure 11 was amended effective December 1, 1999 "to reflect the increasing practice of including provisions in plea agreements which require the defendant to waive certain appellate rights." Fed.R.Crim.P. 11, 1999 advisory committee notes. The newly-added provision states that the sentencing court "must

inform the defendant of, and determine that the defendant understands ... the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed.R.Crim.P. 11( b)( 1)( N).

Here, the sentencing court failed to specifically discuss with Mr. Yamatani the appeal waiver provision in his plea agreement, which appears to preclude an appeal except to the "extent that it exceeds the maximum term of imprisonment provided for by offense level 10." *See United States v. Yamatani*, Case No. 13-149, ECF #5).[2]  A review of the written appellate waiver itself does not end the inquiry. If it did, Rule 11(b)'s requirement that the sentencing court address the defendant personally would be a dead letter.

The court never advised Mr. Yamatani about the waiver, and it never questioned him about the waiver provision.  Even after sentencing, the court did not address Mr. Yamatani's various rights with respect to an appeal.[3]  Simply put, the hearing transcript does not demonstrate the degree to which Mr. Yamatani understood, if at all, the importance of the waiver of appellate rights.[4]

---

[2] The plea agreement also permits an appeal based on clear error pursuant to Rule 35(a), which serves as an alternative basis for this appeal.

[3] At the conclusion of a related defendant's sentencing hearing, which occurred after Mr. Yamatani's hearing, the court stated that "*they both* have the right to an appeal within 14 days and it must be filed in the clerk's office here."  (Ondrik Tr. 6/19/13, p. 21)(emphasis added)(Exhibit 3).  This statement did not draw an objection by government counsel.

[4] To demonstrate the cursory nature of the Rule 11 colloquy, the record does not reflect that the court asked Mr. Yamatani whether he had read the agreement, discussed the agreement with his attorney before signing it and whether it was his signature on the plea agreement, though undersigned counsel does not suggest otherwise.

To the extent Mr. Yamatani's college education and law enforcement background support an assumption that he must have understood the provision in the plea agreement,[5] such an assumption is belied by the prosecutor's own understanding of the waiver paragraph.   The only reference to that provision occurred during the prosecutor's summary of the agreement.   During that summary, the prosecutor described Mr. Yamatani's right to appeal thusly:

> They've [Mr. Yamatani and Ms. Ondrik, a defendant in a related case] also given up the right to appeal their sentence so long as the sentence that the Court imposes is at or below the range provided for by Offense Level 10 and the United States Attorney's Office has concurrently given up its right to appeal any sentence that the Court imposes so long as it is at or above the range provided for by Offense Level 10.

(Tr. 4/30/13, p. 22.)   Mr. Yamatani's counsel concurred that this was his understanding of the terms of the plea agreement.   (Tr. 4/30/13, p. 23.)   Thus, both the government and defense counsel appeared to have understood that Mr. Yamatani maintained the right to appeal the imposition of a sentence above the range of Offense Level 10.[6]  Most importantly, the transcript is silent as to Mr. Yamatani's understanding.

The Fourth Circuit has held that where a sentencing court's mischaracterization of a material term is sufficiently pervasive to alter a defendant's understanding of the terms of his plea, the government's affirmative acquiescence in the court's explanation can serve to modify the terms of the plea agreement. *United States v. Wood,* 378 F.3d 342, 349 (4th Cir.2004).   In this case, the court failed to advise, question, explain or address the waiver

---

[5] There is no evidence in the record to suggest that Mr. Yamatani was familiar with plea agreements in the District of Maryland or elsewhere.

[6] The parties' understanding of the provision may be explained by the fact that language in prior standard plea agreements in the District of Maryland contained the appeal waiver provision as described in court by the Assistant United States Attorney.   (*See, e.g.,* Exhibit 4, p. 6).

of appeal provision in the written plea agreement at all.  More than a mere acquiescence, the government effectively modified the language of the written plea agreement by describing Mr. Yamatani's right to appeal a sentence above Offense Level 10, which both counsel confirmed was their understanding.   Moreover, the government did not object when the sentencing court explained the defendants' rights to appeal.  (Ondrik Tr. 6/19/13, p. 21).

According to United States Sentencing Guidelines (USSG) Section 5E1.2(c)(3), the fine range for the instant offense under Offense Level 10 at the time of sentencing was $2,000.00 to $20,000.00. In this case, the court imposed a fine of $28,000.00.  (*See also Yamatani*, Case No. 13-149, Pre-Sentence Report).   The sentence imposed, therefore, is above Offense Level 10.  Significantly, the modified appeal waiver provision does not limit the appeal to only that part of the sentence that exceeds Offense Level 10. Thus, the entire sentence itself can be appealed.

Given the sentencing court's failure to meet the requirements of Rule 11(b)(1)(N) and the fundamental nature of the underlying right at issue, the appellate waiver in the written plea agreement should not be enforced.  To the extent that this Court finds that the modified waiver provision should be enforced, that provision, at least as counsel for both parties appeared to have understood it, does not preclude Mr. Yamatani from challenging the court's sentence since the sentence was above Offense Level 10.  A different outcome would result in a miscarriage of justice.

### B.     Rule 35(a) Authorizes this Appeal.

Alternatively, in the event this Honorable Court determines that Mr. Yamatani's waiver of appeal was made knowingly and intelligently, or that Mr. Yamatani cannot

appeal a sentence above the range of Offense Level 10, he is nevertheless permitted to appeal the sentence pursuant to Fed.R.Crim.P. 35(a).

Rule 35(a) authorizes the reconsideration and correction of a sentence. The sentencing court must act within 14 days after the imposition of sentence to correct an "arithmetical, technical, or other clear error." *United States v. Goodwyn,* 596 F.3d 233, 235 (4th Cir.2010). There is no requirement that a party file a motion in order for the sentencing court to act. *See United States v. Shank*, 395 F.3d 466 (4th Cir. 2005). The court's failure to act can be appealed as long as the appeal is noticed in a timely manner. *Id.* Under the clear error standard of review, a court may reverse only if "left with the definite and firm conviction that a mistake has been committed." *United States v. Harvey,* 532 F.3d 326, 336–37 (4th Cir.2008).

For the reasons set forth below, the procedural errors amounted to clear error. Thus, Mr. Yamatani is permitted to proceed with his appeal pursuant to Rule 35(a).

### C. The Violation of Mr. Yamatani's Constitutional Rights to Due Process Permit this Appeal.

Mr. Yamatani enjoys still a third basis for review of the sentencing procedure in this case. Obviously, a criminal defendant must be afforded due process at sentencing. *See Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). Moreover, it is beyond dispute that a sentencing hearing may violate the due process clause of the Fifth Amendment if there is a possibility that the sentence imposed may have been based on legal and/or factual error. *See United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)) ("sentencing on the basis of materially untrue assumptions violates due process"); *Moore v. United States*, 571 F.2d 179, 183-84 and n. 7 (3d Cir.1978)( due process may require resentencing when information on which sentencing court relied in

PSI is mistaken or unreliable).  More recently, the Supreme Court has unambiguously held that a sentence is procedurally unreasonable if "based on clearly erroneous facts." *Gall,* 552 U.S. at 51, 128 S.Ct. 586.

In this case, as is explained more fully in Section II.2.A.4. below, the sentencing court considered inaccurate and highly prejudicial information.  To the extent the court relied on this information when imposing a sentence, Mr. Yamatani's constitutional rights were violated and the waiver provision should not be enforced.  *See United States v. Pileggi*, 361 Fed. Appx. 475, 478 (4th Cir. 2010)(sentence based on erroneous facts constitutes plain error affecting substantial rights).

**II.      The Sentencing Court Committed Error.**

**1.      Standard of Review**

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that federal criminal sentences are reviewable by an appellate court for "reasonableness." *Id.* at 262. The Supreme Court has since explained that "'reasonableness' review . . . asks whether the trial court abused its discretion." *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007); *see also Gall v. United States*, 128 S.Ct. 586, 591 (2007) (holding that "all sentences-whether inside, just outside, or significantly outside the Guidelines range-[are reviewed] under a deferential abuse-of-discretion standard"). In conducting the required reasonableness review of a criminal sentence, an appellate court reviews "'the district court's legal conclusions *de novo* and its factual findings for clear error.'" *United States Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008) (quoting *United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006)).

**2.      Discussion**

For the reasons set forth below, the sentence should be vacated, and the case should be remanded for resentencing before a different sentencing judge.

In *United States v. Booker, supra*, the Supreme Court held that the previously mandatory federal Sentencing Guidelines are henceforth "effectively advisory." 543 U.S. at 245. Thus, after *Booker*, a district court must properly calculate the Sentencing Guideline range applicable to a defendant and, then, considering the sentencing factors set forth in 18 U.S.C. § 3553(a) – including the appropriately calculated Sentencing Guideline range – "impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing." *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007). Title 18, United States Code, Section 3553(a) sets forth the factors to be considered by a district court when imposing a sentence.[7]

On appeal, a district court's sentence can be reviewed for both procedural and substantive reasonableness. *Gall*, 128 S.Ct. at 597. The procedural component requires a reviewing court to ensure that the lower court committed no significant procedural error,

---

[7]    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2) the need for the sentence imposed–

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3) the kinds of sentences available;

   (4) the kinds of sentence and the sentencing range established for– (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . ..

   (5) any pertinent policy statement– (A) issued by the Sentencing Commission . . .

   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

   (7) the need to provide restitution to any victims of the offense.

such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range. *Id.* at 51, 128 S.Ct. 586. With regard to substantive reasonableness, an appellate court should "take into account the totality of the circumstances," *id.*, and "the applicable sentencing guidelines range plays an important role" in that analysis. *Abu Ali*, 528 F.3d at 261.

### A.     The Sentencing Court Committed Procedural Error.

When sentencing defendants in the post-*Booker* world, courts must first correctly calculate the defendant's sentence under the Sentencing Guidelines. The court must then allow the parties to argue for what they believe to be an appropriate sentence and consider those arguments in light of the factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp.2009). *See Gall v. United States,* 552 U.S. 38, 49–50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); *United States v. Abu Ali,* 528 F.3d 210, 260 (4th Cir.2008). Sentencing courts are statutorily required to state their reasons for imposing a sentence. *See* 18 U.S.C.A. § 3553(c) (West Supp.2009). Although a comprehensive, detailed opinion is not necessarily required, the court's explanation must nonetheless be sufficient "to satisfy the appellate court that [the district court] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision-making authority." *Rita v. United States,* 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007); *see also Gall,* 552 U.S. at 50, 128 S.Ct. 586 ("After settling on the appropriate sentence, [the sentencing court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.").

Here, the sentencing court erred procedurally in a number of ways. First, the court failed to calculate the guideline range. It merely asked if the parties had any modifications or objections and then proceeded to hear from counsel. (Tr. 6/19/13, p. 4.) Next, the court failed to properly consider all but perhaps one of the § 3553(a) factors. Specifically, the lower court failed to consider or failed to properly consider the history and characteristics of the defendant, the need to provide sufficient deterrence; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution, *see* 18 U.S.C.A. § 3553(a). Next, the sentencing court failed to adequately explain the chosen sentence. *Gall,* 552 U.S. at 51, 128 S.Ct. 586. Finally, the sentencing court considered inaccurate information and may have relied upon that inaccurate information when imposing a sentence.[8]

### 1. The sentencing court did not calculate the guidelines.

In *Gall*, the Supreme Court stated, "A district court should *begin* all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 128 S.Ct. at 596 (emphasis added).[9] With respect to the calculation of the guidelines, there is no evidence in the record that the sentencing court calculated the guidelines before

---

[8] The sentencing court's failure to explain its chosen sentence renders it difficult to determine what information the court relied upon when it sentenced Mr. Yamatani.

[9] This directive would appear to foreclose any reliance on the Statement of Reasons (SOR) as evidence that the court calculated the guidelines before imposing the sentence, since the SOR is filed *after* imposition of the sentence.

imposition of sentence.   There is no evidence in the record that the sentencing court adopted the guidelines set out in the presentence report (PSR) before the imposition of sentence.   In fact, the sentence of imprisonment was two months greater than the low end of range set out in the PSR.   This suggests that the court, at the time it imposed the sentence, may have been relying on a different calculation since both parties, and the probation officer, recommended a sentence of no imprisonment.[10]   Even if the court correctly calculated the guidelines, it did not articulate as much on the record.

### 2.    The sentencing court failed to consider the 3553(a) factors.

With respect to consideration of the 3553(a) factors, although the sentencing court mentioned the seriousness of the offense, the court did so only in passing, without any real explanation of how the court believed that factor affected its sentencing decision. *See* Tr. 6/19/13, p. 16 (" . . . everybody knows that you violated trusts, confidence, oath of office, constitutional oath of office.   You were a special agent.   You were living the life, good life, six-figure income, family.").   To the extent the court even addressed any other factor, that is, sentencing disparity, it was only to compare Mr. Yamatani's actions (submission of a false statement) to violent crime ("You might as well have had a mask because you stuck up the Government.   Might as well have had a gun.") or theft ("When I have defendants before me that have gone into Walmart or Sears and they filled up their shopping cart with a bunch of goodies and they steal, if they steal too many things or if they steal something that's too much in terms of value, they go to jail.   You're no

---

[10] Although the parties agreed to recommend a fine of $28,000.00 to the court, such an imposition required an upward variance.   The sentencing court's failure to announce that it was varying upward or provide a basis for doing so may also lend support to the position that the sentencing court was applying a different Offense Level.   The SOR fails to reflect that the imposed fine was an upward variance.

different.").  (Tr. 6/19/13, p. 17-18)

Neither robbery nor larceny, both felony offenses for which there is a risk of physical harm to others, is appropriate for comparison to a misdemeanor charge of submission of a false writing.    Likewise, comparing Mr. Yamatani's otherwise unblemished record to the unknown criminal histories of others who have appeared before the sentencing court serves no value when imposing an individualized sentence. The sentencing court "must place on the record an 'individualized assessment' based on the particular facts of the case before it. This individualized assessment need not be elaborate or lengthy, but it must provide a rationale tailored to the particular case at hand and adequate to permit 'meaningful appellate review.' " *United States v. Carter,* 564 F.3d 325, 330 (4th Cir.2009) (quoting *Gall,* 552 U.S. at 50, 128 S.Ct. 586) (internal footnote omitted).    Even in cases where the sentencing court imposes a within-Guideline sentence, which is not the case here given the fine, the sentencing court may "provide a less extensive, while still individualized, explanation." *United States v. Johnson,* 587 F.3d 625, 639 (4th Cir.2009).   This the court did not do.

In addition to the sentencing court's cursory--and erroneous--treatment of only two factors which would in and of itself be enough to require resentencing, the sentencing court's failure to consider any of the other factors warrants resentencing.  The court did not address Mr. Yamatani's 14-year history of service to the United States, the fact that there was no risk of recidivism, the fact that his losses (job, retirement, money, reputation, liberties due to the potential imposition of home detention) serve as a deterrent to anyone else in his position; the need to provide Mr. Yamatani with any treatment or training; the kinds of sentences available; the need for restitution, and the

relevant policy statements issued by the Sentencing Commission.  *See United States v. Carter,* 564 F.3d 325, 329 (4th Cir.2009) ("[T]he district court need not robotically tick through § 3553(a)'s every subsection. But at the same time, a talismanic recitation of the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decision-making or provide an adequate basis for appellate review." (citation and internal quotation marks omitted)).  Here, there was not even a talismanic recitation of the other factors; they were completely ignored.

 *Although not addressed by the sentencing court*, Mr. Yamatani's lack of criminal history and his otherwise unblemished career suggest strongly that there is no risk of recidivism and no need to protect the public from future crimes. *See United States v. Moore*, 344 Fed. Appx. 767, 2009 WL 2917532 (3d Cir. 2009) (*unpublished*) (affirming probation where defendant pled guilty to tax evasion and faced an advisory Guideline rage of 18 to 24 months).  Merely stating that "you're no different" than those who steal from retail stores (Tr. 6/19/13, p. 18) is not a sufficient analysis.  As a first-time offender with no prior criminal convictions, both Mr. Yamatani's offense and Mr. Yamatani himself are likely different, as the offense is non-violent and the offender, Mr. Yamatani, falls within the lowest category of individuals recidivating within two years, according to a study issued by the United States Sentencing Commission.  U.S. SENTENCING COMMISSION, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES 6 (2004) [hereinafter U.S.S.C., MEASURING RECIDIVISM] ("Under the primary recidivism measure, offenders in [Criminal History Category] I have a substantially lower risk of recidivating within two years (13.8%) than do offenders in [Criminal History Category] VI (55.2%).").  In fact, Mr. Yamatani likely

is different than many who have appeared before the sentencing court.  Because he has no criminal history points, and as a father of two at 39 years of age, Mr. Yamatani has the lowest predictive risk of recidivism.[11]

*Although not addressed by the sentencing court*, the knowledge of the government's prosecution of Mr. Yamatani will send a clear warning to government employees that there is a significant price to pay for filing false vouchers.  As the government itself recognized, a sentence of probation with conditions "strikes the balance" and sends a strong message to "others who are also law enforcement, that even if they . . . stray from the straight and narrow, . . . that's going to result in pretty significant consequences," which the government recognized to be prosecution, loss of job, and home detention.  (Tr. 6/19/13, p. 11.) General deterrence would have been satisfied by the government's recommended sentence of probation with a period of home detention.

*Although not addressed by the sentencing court*, incarceration is not required to provide Mr. Yamatani with "needed educational or vocational training, medical care, or other correctional treatment."   There is nothing the U.S. Bureau of Prisons can provide that will improve or enhance Mr. Yamatani's present condition. *See* 18 U.S.C. § 3582(a) ("imprisonment is not an appropriate means of promoting correction and rehabilitation.").

*Although not addressed by the sentencing court*, other than to say "[n]o, I will not impose home detention.  You will not be on probation just for the sake of probation," (Tr.

---

[11] According to the U.S.S.G. 2004 study, "[c]riminal history points represent the purest form in which the guidelines measure recidivism risk." U.S.S.C. MEASURING RECIDIVISM 7 (2004). The Sentencing Commission notes, "Recidivism rates decline relatively consistently as age increases . . . the younger the offender, the more likely the offender recidivates." *Id.* at 12 (2004).

6/19/13, p. 18), the sentencing court had the authority to exercise its discretion to consider a wide range of alternatives to imprisonment. 18 U.S.C. §§ 3553(a)(3) and 3561(a)(1).  In fact, § 3553(a)(3) specifically directs the judge to consider sentences *other than* imprisonment and the severity of a probationary sentence should not be underestimated. As the Supreme Court stated in *Gall:*

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119 (2001) ('Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled.') (*quoting Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. U.S.S.G. § 5B1.3. Most probationers are also subject to individual 'special conditions' imposed by the court.

552 U.S. at 48 (footnote omitted).[12]  Judge Pratt, the United States District Judge who sentenced Gall, explained that the defendant "will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court.  Of course, the Defendant always faces the harsh

---

[12] The *Gall* Court noted that "'[p]robation is not granted out of a spirit of leniency… As the Wickersham Commission said, probation is not merely 'letting an offender off easily,''" 128 S. Ct. at 596 n.4 (citing Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 113-14 (1957), and "'the probation or parole conditions imposed on an individual can have a significant impact on both that person and society… Often these conditions comprehensively regulate significant facets of their day-to-day lives… They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist.'" *Id.* (citing 1 N. Cohen, the Law of Probation and Parole § 7:9 (2d ed. 1999) (brackets omitted)).

consequences that await if he violates the conditions of his probationary term." *See id.* Lacking any meaningful analysis, it appears the sentencing court sentenced Mr. Yamatani to imprisonment just for the sake of imprisonment.

*Although not addressed by the sentencing court*, Title 18 USC Section 3553(a)(4) is intended to accord "flexibility" to sentencing judges by "provid[ing] alternatives to incarceration where necessary…" *U.S. v. K*, 160 F. Supp. 2d 421, 431 (E.D.N.Y. 2001). Probation, home detention and community service are available alternatives to imprisonment.

The sentencing court could have also considered a sentence of probation with a period of home detention, which has been defined by the Guidelines as:

> ….a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office. When an order of home detention is imposed, the defendant is required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, education or training programs, and such other times as may be specifically authorized. Electronic monitoring is an appropriate means of surveillance and ordinarily should be used in connection with home detention. However, alternative means of surveillance may be used so long as they are as effective as electronic monitoring.

U.S.S.G. § 5F1.2 (Commentary).

Home detention represents a desirable alternative to imprisonment that is consistent with the underlying policies of the Guidelines. The language from USSG § 5H1.4 is instructive, albeit in the context of departures. Here a departure was not necessary to consider a term of home detention. That section states in appropriate cases "home detention may be as efficient as, and less costly than, imprisonment." That statement centers on the idea that when home detention is a sufficient and efficient

punishment, considerations of cost may be entertained. The policy is best understood in light of the history of the Guidelines.

The Sentencing Reform Act of 1984, Pub. L. No. 980473, § 211, 98 Stat. 1987, 1989-90 (1984), which created the United States Sentencing Commission and delegated to that Commission the authority to create the Guidelines, was enacted in part to address prison overcrowding. *See K*, 160 F. Supp. 2d at 432 ("What is often ignored in rigidly applying the current Guidelines, is another of the statute's aims-reducing prison overcrowding."). Congress, in the Sentencing Reform Act, instructed the Commission to formulate the Guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of Federal prisons." 28 U.S.C. § 994(g). "[U]ndergoing the federal sentencing reform movement was the notion that prison overcrowding or costly expansion could best be controlled through selective incapacitation and utilization of alternatives to incarceration and utilization of alternatives to incarceration in appropriate cases." *K*, 160 F. Supp. 2d at 432. "Discretion to impose alternatives to incarceration was to be an important means of eliminating prison overcrowding under the Act." *Id.* at 432; *see also* Edward M. Kennedy, Prison Overcrowding: The Law's Dilemma, in 478 Annals of The American Academy of Political and Social Science 113, 120 (1985) ("These provisions evidence the clear congressional intent that the guidelines should not contribute to prison overcrowding but should help to bring prison populations in line with prison capacities."). As "[o]vercrowding and cramped living conditions are particularly pressing problems in many prisons," *Rhodes v. Chapman*, 452 U.S. 337, 356 (1981), "'the soul-chilling inhumanity of conditions in American prisons has been thrust upon the

judicial conscience.'" *Id.* at 354 (citing *Inmates of Suffolk County Jail v. Eisenstadt*, 360 F. Supp. 676, 684 (D. Mass. 1973)).

The sentencing court apparently did not consider yet another kind of sentence available to it; that is, community service. Community service has been recognized as "a burdensome penalty that meets with widespread public approval, is inexpensive to administer …. produces public value …. and …. can to a significant extent be scaled to the seriousness of the crimes." MICHAEL TONRY, INTERMEDIATE SANCTIONS IN SENTENCING GUIDELINES 11, Nat'l Inst. Of Justice (1997), *available at* http://www.nejrs.gov/pdffiles/165043.pdf. Community service is also "a flexible, personalized, and humane sanction, a way for the offender to repay or restore the community. It is practical, cost-effective, and fair – a 'win-win' proposition for everyone involved." OFFICE OF PROB. AND PRETRIAL SERVICES, ADMIN. OFFICE OF THE U.S. COURT, COURT & COMMUNITY: AN INFORMATION SERIES ABOUT U.S. PROBATION & PRETRIAL SERVICES: COMMUNITY SERVICE (2005), *available at* http://www.uscourts.gov/misc/revision-community.pdf.

Unlike incarceration, which incurs costs upon the government, the purposes of justice may be equally served with a non-incarceratory sentence. Section 3553 provides that a sufficient sentence should, *inter alia*, "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense." Here, home detention would impose significant restrictions on Mr. Yamatani, though the sentencing court did not address this option in any meaningful analysis, while still providing a means to support his family and satisfy his obligations to the government. The sentencing court's response to the joint recommendation by both the probation officer and the

government counsel was met with a simple, "[n]o, I will not impose home detention." (Tr. 6/19/13, p. 18.)

In the context of justifying a probationary sentence, Mr. Yamatani and government counsel raised several specific non-frivolous factors with the court: Mr. Yamatani's history and characteristics (Tr. 6/19/13, p. 10, 13), the need to provide sufficient deterrence (Tr. 6/19/13, p. 6, 11); the need to protect the public from further crimes of the defendant (Tr. 6/19/13, p. 6); the kinds of sentences available (Tr. 6/19/13, p. 5-6, 8, 11); and the need to provide restitution (Tr. 6/19/13, p. 9). Even if neither the government nor Mr. Yamatani had done so, a sentencing court must nevertheless consider the seven § 3553(a) factors, *see Gall,* 552 U.S. at 49–50, 128 S.Ct. 586. The record does not demonstrate that the sentencing court considered these factors; it therefore committed procedural error.

### 3. The sentencing court failed to adequately explain the chosen sentence.

In *Rita*, the Supreme Court held that, where a party presents non-frivolous reasons for imposing a sentence, the sentencing court must explain why it has rejected those arguments. *Id.* at 356-58; *see Gall v. United States,* 552 U.S. 38, 49-50 (2007) ("[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the sentencing judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested.") *see also United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir 2006) (sentencing courts "are obligated to explain their sentences whether those sentences are within or beyond the Guidelines range"; sentencing court's explanation must indicate "(1) that the court considered the § 3553(a)

factors with respect to the particular defendant, and (2) that it has also considered the potentially meritorious arguments raised by both parties about sentencing").

Also, the Supreme Court has concluded that the mere fact that a lower court's sentence falls within the advisory Guidelines range does not relieve the court of its burden to consider the defendant's arguments under § 3553 for a lower sentence. *See Rita*, 551 U.S. at 356-58; *Nelson v. United States*, 129 S. Ct. 890 (2009) (district court erred in presuming that sentence within guidelines range was reasonable). Lower courts have also found that no one factor should receive excessive weight in the sentencing court's decision to impose a particular sentence. *See, e.g, United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006); *United States v. Tucker*, 473 F.3d 556, 561 (4th Cir. 2007) (sentence must be selected pursuant to a reasoned process in accordance with law, in which sentencing court did not give excessive weight to any relevant factor).

Other courts have further instructed that "[t]he [sentencing] court must also address, in its statement of reasons, the material, non-frivolous arguments made by the defendant." *See United States v. Ausburn,* 502 F.3d 313, 329 (3d Cir.2007) ("[W]e have stated at least one concrete requirement to establish that the sentencing court gave meaningful consideration to the relevant § 3553(a) factors: the court must acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis.").

Beyond the sentencing court's terse rejection of the joint requests, there is no further indication that the sentencing court considered both the government's and Mr. Yamatani's material, non-frivolous Section 3553(a) arguments, which were supported with specific examples. For instance, government counsel explained how the prosecution

itself, the loss of a career, the financial penalty and home detention would serve as a general deterrent (Tr. 6/19/13, p. 11).  Mr. Yamatani, through counsel, explained how other sentences would serve to punish the defendant.  (Tr. 6/19/13, p. 5-8).  *See United States v. Pinson,* 542 F.3d at 833 ("The district court is not required to recite any magic words to demonstrate that it has considered all of the relevant arguments, but we will not presume the district court weighed a party's arguments in light of the 3553(a) factors where the record provides no indication that it did so." (quotations omitted)); *see also United States v. Harris,* 567 F.3d 846, 854 (7th Cir.), *cert. denied,* 558 U.S. 1099, 130 S.Ct. 1032, 175 L.Ed.2d 632 (2009) ("[W]hen a court has passed over in silence the principal argument made by the defendant even though the argument is not so weak as not to merit discussion, we do not have the assurance we need to satisfy ourselves that the defendant's individual circumstances have been thoroughly considered." (quotation omitted)); *see also United States v. Merced,* 603 F.3d 203, 215 (3d Cir.2010) ("[I]t is not enough for the district court to carefully analyze the sentencing factors. A separate and equally important procedural requirement is *demonstrating that it has done so.*").

Both government and defense counsel requested a sentence of probation, the former asking for special conditions.  The government specifically argued that such a sentence would be adequate, but not greater than necessary to meet the goals of federal sentencing.  (Tr. 6/19/13, p. 10).  By failing to address the non-frivolous arguments of the parties or to explain why such a sentence would not be "sufficient, but not greater than necessary," the sentencing court committed procedural error.

### 4.     The sentencing court considered inaccurate information.

A defendant has a right to be sentenced on accurate information.  *See, e.g., U.S. v.*

*Clanton,* 538 F.3d 652, 655 (7th Cir.2008) ("There is no doubt that a criminal defendant has a due process right to have the court consider only accurate information when imposing sentence, and that this right may be violated when the court considers information which is inaccurate." (internal quotation marks omitted)). "A due process violation is established only if the defendant shows that the district court relied on materially false information and that the information is demonstrably the basis for the challenged sentence." *United States v. Carr,* 66 F.3d 981, 983 (8th Cir.1995) (per curiam). Due process requires that a convicted defendant: "(1) not be sentenced based on materially false information, (2) not be sentenced based on a material misapprehension of fact, and (3) be given notice and an opportunity to contest the facts upon which the sentencing authority relied in imposing the sentence." *Dewall v. Superintendent, Mohawk Corr. Fac.,* 05-CV-5583 (NGG)(RLM), 2008 WL 3887603, at *13 (E.D.N.Y. Aug. 20, 2008) (denying petitioner's due process sentencing claim) (internal citations and quotation marks omitted).

The sentencing court made assumptions with no basis in fact. First, the sentencing court assumed Mr. Yamatani resigned "under fire." (Tr. 6/19/13, p. 16.) In fact, Mr. Yamatani voluntarily resigned from his job, demonstrating his acceptance of responsibility. There was no evidence of any adverse action pending. Second, there was no evidence that "it was crime only made possible due to the place of trust that you occupied." (Tr. 6/19/13, p. 16.). Mr. Yamatani's position as a special agent had no bearing on the submission of the false vouchers. This is confirmed by both the government's position and that of the probation officer with respect to the calculation of the guidelines in the pre-sentence report. Mr. Yamatani was in the same position as

thousands of government employees who submit travel vouchers daily.  His status did not play a role in the offense, except to the extent that the government sought to prosecute him to deter others in the same position.  (Tr. 6/19/13, p. 11.)  Third, the sentencing judge stated during Ms. Ondrik's hearing, which followed Mr. Yamatani's, that he believed that both individuals had attempted to obtain "nearly $40,000.00."  (Ondrik Tr. 6/19/13, p. 16).[13]  On the contrary, as set out in the PSR, the loss amount, which includes both actual and intended loss, was between $10,000.00 and $30,000.00.  Finally, as explained in greater detail below, the sentencing court may have considered inaccurate information that had been submitted and later withdrawn by the government.[14]

By way of background, the government submitted two letters under seal from individuals at the Department of Commerce two days before sentencing.  *United States v. Yamatani*, Case No. 13-149-CBD, ECF #10.  These letters, written by senior ranking officials who have a personal vendetta against Mr. Yamatani and who are themselves under investigation by both the Office of Special Counsel and the House of Representatives regarding management concerns,[15] were filled with inaccurate and highly prejudicial accusations pertaining to Mr. Yamatani and a related defendant, Rachel Ondrik.  Shortly after submitting the letters, after an objection by defense counsel, the

---

[13] The sentencing court made no mention of the loss amount during Mr. Yamatani's hearing; thus, he had no opportunity to object to that incorrect calculation.

[14] This issue was only discovered during Ms. Ondrik's sentencing, which occurred immediately after Mr. Yamatani's sentence.

[15] http://www.pogo.org/blog/2013/03/20130311-commerce-inspector-general-faces-misconduct-allegations.html (last accessed July 15, 2013)(Zinser and Beitel are alleged to have forced at least four senior OIG law enforcement officers to sign non-disclosure agreements saying they would not provide any information about the Commerce OIG to Congress or the OSC. The officers were allegedly threatened with fabricated negative performance appraisals that would be shared with any potential new employers if they did not agree to sign.)

government moved to withdraw them.  *Yamatani*, Case No. 13-149-CBD, ECF #13. During the sentencing hearing for Ms. Ondrik, only after Ms. Ondrik's counsel questioned the sentencing court about the letters, counsel for both Ms. Ondrik and Mr. Yamatani learned that the sentencing court had read the letters.  Prior to that time, the sentencing court had provided no notice that it had done so.

Mr. Yamatani recognizes that there is no procedural error if the court simply reads untrue or inaccurate information, see *Clanton,* 538 F.3d at 655 (explaining that there is no "due process right to have a PSR free of [materially untrue, inaccurate information]" and there is no error unless "the judge ... [relied] on the allegedly inaccurate information"). However, in this case, the sentencing judge tacitly acknowledged, after being asked if he had reviewed the letters, that he could not completely put that information out of his mind.  "I have deliberately divorced myself of that information *as best I can*."  (Ondrik Tr. 6/19/13, p. 5)(emphasis added).[16]   After additional questioning by Ms. Ondrik's counsel, the sentencing judge stated that he felt "comfortable" that he was "not using that [information] for any purpose."    (Ondrik Tr. 6/19/13, p. 6).

Because the sentencing court did not explain its chosen sentence, a reviewing court cannot determine whether any of the aforementioned information played a factor with respect to the sentence imposed.  To the extent that the information was considered,

---

[16] The sentencing court's candid statement is consistent with human nature.  Judge Reggie Walton declared a mistrial in the first Roger Clemens trial after jurors improperly heard details that he had previously ruled were inadmissible.  Judge Walton stated, "I don't see how I can unring the bell."  http://blogs.wsj.com/metropolis/2011/07/14/judge-weighs-mistrial-in-roger-clemens-case/?blog_id=147&post_id=13563 (last accessed July 3, 2013).  This fact is borne out by the sentencing court's use of identical and inaccurate phrases contained within the letters, such as "abused their positions of trust" and "corruption," when neither description  was suggested by either the government or the probation officer.  (Tr. 6/19/13, p. 16; *Yamatani*, Case No. 13-149, ECF #10).

such consideration would amount to procedural error.

**5.      These Errors Were Not Harmless.**

Had the sentencing court addressed the aforementioned 3553(a) factors, to include the government's articulated bases for seeking home detention, an explicit consideration of a sentence of probation with home detention might have convinced the court to impose such a sentence. *See United States v. Lynn*, 592 F.3d 572, 582 (4th Cir. 2010). The government bears the burden to show that the errors did not affect the sentence. This it cannot do, especially given the lack of adequate explanation for the chosen sentence.

Under these circumstances, this Honorable Court cannot determine whether the sentence is reasonable without a fuller explanation of the reasoning behind the sentencing court's view that a term of imprisonment was warranted in light of the factors supporting a period of probation with conditions. *See Gall,* 552 U.S. at 50, 128 S.Ct. 586 (noting that sentencing court "must make an individualized assessment based on the facts presented"). Because the sentencing court's explanation of its decision is insufficient to permit meaningful appellate review, this Court should vacate the sentence and remand for new sentencing proceedings.

**B.      The Sentencing Court Committed Substantive Error.**

**1.  Standard of Review**

Assuming this Honorable Court has found procedural error which warrants remand, there is no need to conduct a substantive error review. ("Having found the sentence procedurally unreasonable, we cannot review the sentence for substantive reasonableness."); *United States v. Stephens,* 549 F.3d 459, 465 (6th Cir.2008) ("If, and only if, the district court's sentencing decision is procedurally sound, we will then

consider" [its substantive reasonableness].)   In the event that this Court has determined there is no procedural error, it must then consider the substantive reasonableness of the sentence.

A sentence is substantively unreasonable if, taking into account the totality of the circumstances, the § 3553(a) factors, on a whole, do not justify the sentence imposed. *Gall v. United States*, 552 U.S. 38, 51 (2007).   These factors include "the need for the sentence imposed . . . to reflect the seriousness of the offense" and "the need to avoid unwarranted sentencing disparities among defendants . . . who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(2), (a)(6).  Section 3553(a), as modified by *United States v. Booker*, 543 U.S. 220 (2005), "contains an overarching provision instructing [lower] courts to "'impose a sentence sufficient, but not greater than necessary'" to accomplish the goals of sentencing, including   "'promot[ing] respect for the law,'" "'provid[ing] just punishment for the offense,'" and "'afford[ing] adequate deterrence to criminal conduct[.]'"")  *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 8 U.S.C. § 3553(a)); *see also United States v. Rigas*, 583 F.3d 108, 122 (2nd Cir. 2009) (lower court has imposed a sentence that is substantively unreasonable "if the sentence is based on a decision that cannot be located within the range of permissible decisions") (quotation omitted); *United States v. Finley*, 531 F.3d 288, 291 (4th Cir. 2008) (sentence is substantively unreasonable if it is "far too long") (quotation omitted); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) ("The review for substantive unreasonableness involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question.").

**2. Discussion**

As Judge Jed S. Rakoff (S.D.N.Y.) eloquently noted in *United States v. Adelson* :

> *...if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed court to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."* [17]

Mr. Yamatani was a first-time offender who committed a non-violent offense. Prior to that time, he had served his country honorably for 14 years. Because Mr. Yamatani is not at risk for recidivism, a sentence that avoids *further* incarceration does not create a risk to the public.[18]   Indeed, the ordeal of prosecution, the stigma of a criminal conviction (which has resulted in the loss of his livelihood, all that he had worked towards during his professional life), the burden of federal probation, are all themselves significant punishment, the collective weight of which are proportionate to the misdemeanor crime.   Incarceration is unnecessary to promote respect for the law in this case.

The sentencing court, however, made no mention of these specific considerations, nor did the court more broadly acknowledge the general principles of sentencing, other than to chastise the government for its view that a term of probation long enough to

---

[17] In December 2009, the Second Circuit affirmed Adelson's sentence in a two page summary judgment (*United States v. Adelson, 2008 WL 515534 (2d Cir. Dec. 9, 2008))*.
[18] The sentencing court directed the US Marshals to place Mr. Yamatani in custody immediately after imposing sentence.  On appeal, this order was reversed two days later and Mr. Yamatani was released three days after that.

ensure full restitution is appropriate. (Tr. 6/19/13, p. 17; "[t]hat's not my concern"). While the offense was serious and Mr. Yamatani's actions were wrong, the sentencing court failed to follow the touchstone of sentencing jurisprudence - the parsimony principle - when it imposed a sentence which was "far too long" and was "greater than necessary" to achieve the goals of sentencing set out in 3553(a).

For all the reasons set out in this memorandum, a sentence of 8 months' imprisonment was substantively unreasonable.

### III.    The case should be remanded to a new sentencing court.

The case should be ordered reassigned to a different sentencing court on remand. The Fourth Circuit has previously examined such requests using the three-part test delineated by the Second Circuit Court of Appeals in *United States v. Robin,* 553 F.2d 8 (2d Cir.1977) (per curiam): (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. *United States v. Guglielmi,* 929 F.2d 1001, 1007 (4th Cir.1991) (quoting *Robin,* 553 F.2d at 10).

Here, the sentencing court rejected the joint sentencing recommendation of the parties, as well as the Probation Office.  In so doing, the court failed to calculate the guidelines, failed to consider the 3553(a) factors, and failed to explain its sentence.  The court affirmatively stated that it was not concerned with Mr. Yamatani's payment of restitution, which is one of the 3553(a) factors; compared the offense with armed

33

robbery; assumed several facts, such as a "resignation under fire," "abuse of position of trust" and a loss amount of "nearly $40,000.00" that were not accurate; stated that it had divorced itself of inaccurate information "as best I can;" and criticized others "in this courthouse" who permit self-surrender ("I tend to think that we treat white-collar criminals special" (Tr. 6/19/13, p. 19)), directing the US Marshals Service to take Mr. Yamatani into custody without conducting an appropriate analysis pursuant to Title 18 USC Section 3143.  These actions and statements suggest that the sentencing court would have substantial difficulty reconsidering the joint sentencing recommendation on remand. Accordingly, and in order to preserve the appearance of justice, while recognizing it would not be burdensome to do so, reassignment should be ordered.

## CONCLUSION

For the foregoing reasons, Mr. Yamatani respectfully requests that this Court vacate the sentence and remand for re-sentencing before a different sentencing court.

Respectfully submitted,

_____/s/_____
Steven H. Levin
LEVIN & CURLETT LLC
250 West Pratt Street,  Suite 1300
Baltimore MD 21201
(410) 685-4444

## REQUEST FOR ORAL ARGUMENT

Undersigned counsel respectfully requests oral argument to the extent that such argument would assist this Honorable Court.

_____/s/_____
Steven H. Levin

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 15, 2013, a copy of this Memorandum was served by electronic mail to all parties.

_____/s/_____
Steven H. Levin