



GOVERNMENT EXHIBIT 1

U.S. Department of Justice
United States Attorney
District of Maryland
Northern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2010 APR 15 P 5:30
CLERK'S OFFICE
AT BALTIMORE
BY_____ DEPUTY

*Rod J. Rosenstein*
*United States Attorney*

*Kwame J. Manley*
*Assistant United States Attorney*

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4869
MAIN: 410-209-4800
FAX: 410-962-3124
TTY/TDD: 410-962-4462
Kwame.Manley@usdoj.gov

April 2, 2010

Gary Proctor, Esq.
8 East Mulberry Street
Baltimore, MD 21202

    Re:    United States v. Robert Anthony Reed
              Criminal Case No. L-10-0134

Dear Mr. Proctor:

       This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by April 16, 2010, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

       1.    The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

       2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

(A)    During the dates alleged in the Indictment, the defendant knowingly conspired and agreed with others to knowingly engage, attempt to engage, and cause others to engage in monetary transactions in and affecting interstate commerce;

(B)    Involving criminally derived property;

Revised 8/8/08

(C) With a value greater than $10,000;

(D) Derived from a specified unlawful activity, that is interstate transportation of stolen property.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 10 years imprisonment, $250,000 fine, and 3 years supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

    5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

    6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

## STATEMENT OF FACTS

If this matter had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The parties agree that the following facts do not encompass all of the fact that would have been proven had this matter proceeded to trial.

During the dates alleged in the Indictment, the Defendants Jerome Ira Stal, Spencer Michael Garonzik, Jared Baraloto, Jason Logue, Louis Leitch Sr., Michael Brian Levy, Jared Lee Ezra, Warren Allen Culver II, Daniel Filip Mimer, Robert Anthony Reed, Michael Paul Ender, Justin Noel Mayhew, Scott Bradford, William Cooper Jr., Nick Acosta, and others including but not limited to Y.W. and A.R., engaged in a conspiracy to conduct monetary transactions involving the sale of stolen products. Based on witness interviews, law enforcement surveillance, and federal interception of recorded calls, investigators have determined that the Defendants were involved in the purchase and sale of mass quantities of stolen over-the-counter medications, health and beauty aid products, gift cards, DVDs, tools, and other merchandise. The pawn shops listed in the Indictment would buy large amounts of stolen items from shoplifters, also known as "boosters." The boosters will steal products from Target, Safeway, Wal-Mart, Kohl's, and other retailers in Maryland and other states. The boosters would then sell the stolen products to the Defendants at their pawn shops. Investigators have observed boosters bringing in large bags full of stolen material. The stolen items often had retail security labels and merchandise tags still on the products. Knowing that such items were stolen, the Defendants paid pennies on the dollar for each item. Some of the Defendants even told the boosters which products to steal and which stores to target in the theft ring.

The Defendant Robert Reed and others were responsible for picking up the stolen products from the pawn shops and delivering them to TS Liquidators, 4126A Menlo Drive, Baltimore, Maryland. Reed was instructed by Defendants Jerome Stal, Spencer Michael Garonzik, Jared Baraloto and others to pick up and transport the stolen material. Once the items were taken to TS Liquidators, Reed and others would "clean" the stolen material, that is remove the security labels and retail tags from the stolen product. Sometimes a heat gun and lighter fluid would be used to peal away the plastic security labels. The cleaning occurred at TS Liquidators, as well as at the individual pawn shops. After the stolen items were cleaned, Reed assisted in shipping those products in interstate transportation to various locations. Some of the Defendants also had on-line auctions sites, such as eBay and Amazon.com, where they would sell the stolen products far below normal retail value. The stolen products were then delivered to unsuspecting customers via the United States Mail. The Defendants received payment back by interstate wire transfers using PayPal accounts and through various financial institutions in Maryland.

On March 25, 2010, agents from the United States Postal Inspection Service, Baltimore County Police Department, and the Federal Bureau of Investigation executed search warrants at TS Liquidators and several pawn shops in this case. Agents recovered well over $1 million in stolen merchandise, approximately $1 million in bank accounts, and over $140,000 in cash. The Defendant Robert Reed admits that he knowingly conspired and agreed with the Defendants to knowingly engage, attempt to engage, and cause others to engage in monetary transactions, in and affecting

interstate commerce, in criminally derived property that was of a value greater than $10,000, and was derived from specified unlawful activity: that is, interstate transportation of stolen property in violation of 18 U.S.C. §§ 1957 and 1956(h). Although the entire conspiracy involved approximately $20 million in stolen merchandise, at least $1 million but less than $2.5 million in stolen product was reasonably foreseeable to the Defendant.

## ADVISORY GUIDELINE FACTORS

The parties agree that the Defendant has a base offense level of 8, pursuant to U.S.S.G. § 2S1.1(a)(2). The parties agree that 16 levels should be added because at least $1,000,000 but less than $2.5 million in stolen product was reasonably foreseeable to this Defendant, pursuant to U.S.S.G. § 2S1.1(a)(2) and § 2B1.1(b)(1). The parties agree that the offense level is increased by 1 level pursuant to § 2S1.1(b)(2)(A). The total adjusted offense level is 25

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

With the three-level reduction for acceptance of responsibility, the offense level is 22.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute, except that the Defendant can argue for a role reduction under U.S.S.G. § 3B1.2(a). The United States is free to oppose. The Defendant agrees to provide this Office with ten days notice of any intention to seek a reduction under any Section 3553(a) factor.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will make a sentencing recommendation within the advisory guideline range. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant waives the right to appeal from any sentence within or below the advisory guidelines range resulting from an adjusted base offense level of 22; (ii) and this Office waives the right to appeal from any sentence within or above the advisory guidelines range resulting from an adjusted base offense level of 22.

   c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

12. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

13. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

14. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other

than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Kwame J. Manley
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4-13-10
Date

Robert Anthony Reed

I am Robert Anthony Reed's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4/13/10
Date

Gary Proctor, Esq.