--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Fourth Circuit.
UNITED STATES of America, Plaintiff–Appellee,
v.
YOOHO **WEON**, a/k/a Peter, Defendant–Appellant.

No. 12–4164.
Argued May **17**, 2013.
Decided **July 17**, 2013.

**Background:** Defendant pleaded guilty in the United States District Court for the District of Maryland, Benson Everett Legg, Senior District Judge, to five counts of tax evasion. Defendant appealed.

**Holdings:** The Court of Appeals, Barbara Milano Keenan, Circuit Judge, held that:
(1) appellate waiver provision in plea agreement did not bar defendant's appeal;
(2) district court properly held defendant to the $2,400,000 loss amount stipulated in the plea agreement; and
(3) defendant's 30–month sentence was substantively reasonable.

Affirmed.

West Headnotes

**[1] Criminal Law 110 🗝1026.10(4)**

110 Criminal Law
    110XXIV Review
        110XXIV(D) Right of Review
            110k1025 Right of Defendant to Review
                110k1026.10 Waiver or Loss of Right
                    110k1026.10(2) Plea of Guilty or Nolo Contendere
                    110k1026.10(4) k. Issues Considered. Most Cited Cases

Appellate waiver provision in plea agreement in which defendant pleaded guilty to willfully evading corporate income taxes, which stated that defendant reserved the right to appeal from any sentence above the advisory guidelines range resulting from an adjusted base offense level of 19, alleging his 30-month sentence was procedurally and substantively unreasonable; waiver provision was ambiguous as applied to defendant in the context of the district court's finding that the adjusted base offense level was 20 rather than 19. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[2] Criminal Law 110 🗝1026.10(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(D) Right of Review
            110k1025 Right of Defendant to Review
                110k1026.10 Waiver or Loss of Right
                    110k1026.10(1) k. In General. Most Cited Cases

A defendant's waiver of his right to appeal a conviction or sentence is valid and enforceable if such waiver was knowingly and intelligently made.

**[3] Criminal Law 110 🗝1026.10(4)**

110 Criminal Law
    110XXIV Review
        110XXIV(D) Right of Review
            110k1025 Right of Defendant to Review
                110k1026.10 Waiver or Loss of Right
                    110k1026.10(2) Plea of Guilty or Nolo Contendere

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

110k1026.10(4) k. Issues Considered. Most Cited Cases

In determining whether an appellate waiver provision bars consideration of the issues raised in a particular appeal, Court of Appeals interprets the terms of the parties' plea agreement in accordance with traditional principles of contract law.

**[4] Criminal Law 110 &#x1F511;1026.10(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(D) Right of Review
           110k1025 Right of Defendant to Review
               110k1026.10 Waiver or Loss of Right
                   110k1026.10(1) k. In General. Most Cited Cases

Because appellate waiver provisions usually are drafted by the government, and because such provisions implicate a defendant's constitutional rights, Court of Appeals holds the government to a greater degree of responsibility for any ambiguities than the defendant, or even than the drafter of a provision of a commercial contract.

**[5] Criminal Law 110 &#x1F511;1026.10(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(D) Right of Review
           110k1025 Right of Defendant to Review
               110k1026.10 Waiver or Loss of Right
                   110k1026.10(1) k. In General. Most Cited Cases

Court of Appeals will enforce an appellate waiver provision against a defendant only if that provision is clearly and unambiguously applicable to the issues raised by the defendant on appeal.

**[6] Criminal Law 110 &#x1F511;1156.2**

110 Criminal Law
    110XXIV Review
        110XXIV(N) Discretion of Lower Court
           110k1156.1 Sentencing
               110k1156.2 k. In General. Most Cited Cases

**Criminal Law 110 &#x1F511;1156.3**

110 Criminal Law
    110XXIV Review
        110XXIV(N) Discretion of Lower Court
           110k1156.1 Sentencing
               110k1156.3 k. Application of Guidelines. Most Cited Cases

Court of Appeals reviews a district court's imposition of a sentence, whether inside, just outside, or significantly outside the Guidelines range, under a deferential abuse-of-discretion standard. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[7] Sentencing and Punishment 350H &#x1F511;40**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(C) Factors or Purposes in General
           350Hk40 k. In General. Most Cited Cases

In considering a challenge to the procedural reasonableness of a sentence, Court of Appeals must assess, among other things, whether the district court considered the statutory sentencing factors and analyzed the arguments presented by the parties. 18 U.S.C.A. § 3553(a).

**[8] Criminal Law 110 &#x1F511;273.1(2)**

110 Criminal Law

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

    110XV Pleas
        110k272 Plea of Guilty
            110k273.1 Voluntary Character
                110k273.1(2) k. Representations, Promises, or Coercion; Plea Bargaining. Most Cited Cases

In interpreting the terms of a plea agreement in conformity with principles of general contract law, Court of Appeals applies the plain meaning of the agreement's terms with the goal of providing each party the benefit of its bargain.

**[9] Criminal Law 110 🗝273.1(2)**

110 Criminal Law
    110XV Pleas
        110k272 Plea of Guilty
            110k273.1 Voluntary Character
                110k273.1(2) k. Representations, Promises, or Coercion; Plea Bargaining. Most Cited Cases

When a term in a plea agreement is unambiguous, neither party will be permitted unilaterally to renege or seek modification simply because of uninduced mistake or change of mind.

**[10] Sentencing and Punishment 350H 🗝60**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(C) Factors or Purposes in General
            350Hk60 k. Plea Bargain or Other Agreement. Most Cited Cases

**Sentencing and Punishment 350H 🗝736**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(B) Offense Levels
            350HIV(B)3 Factors Applicable to Several Offenses
                350Hk736 k. Value of Loss or Benefit. Most Cited Cases

District court did not abuse its discretion in holding defendant to the $2,400,000 loss amount stipulated in the plea agreement, and the court was not required in its consideration of the statutory sentencing factors to consider defendant's proffered evidence that the tax revenue loss amount was only $40,000, when sentencing defendant for evading corporate income taxes; defendant knowingly and voluntarily stipulated in his plea agreement that the loss amount was $2,400,000 for purposes of the agreement and sentencing, he stated under oath during plea hearing that the factual stipulations in the agreement were true and correct, and his attempt to argue that the tax revenue loss was materially less than $2,400,000 was a unilateral reneging on the basis of uninduced mistake or change of mind. 18 U.S.C.A. § 3553(a).

**[11] Internal Revenue 220 🗝5319**

220 Internal Revenue
    220XXXII Offenses
        220XXXII(B) Criminal Prosecution
            220k5319 k. Judgment, Sentence, Punishment, and Review. Most Cited Cases

**Sentencing and Punishment 350H 🗝66**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(D) Factors Related to Offense
            350Hk66 k. Nature, Degree or Seriousness of Offense. Most Cited Cases

**Sentencing and Punishment 350H 🗝95**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(E) Factors Related to Offender
            350Hk93 Other Offenses, Charges, Mis-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

conduct

    350Hk95 k. Nature, Degree, or Seriousness of Other Misconduct. Most Cited Cases

Defendant's below-Guidelines 30–month sentence for five counts of evading corporate income taxes was substantively reasonable; defendant previously had been convicted of selling to an undercover FBI agent counterfeit computer accessories having a retail value of around $46,700, district court discussed the seriousness of defendant's present tax offenses, noting that this was not a case in which there were unreported small shavings, but rather that millions and millions of dollars of income were not reported to the Internal Revenue Service (IRS). U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[12] Criminal Law 110 🗝1156.2**

110 Criminal Law
    110XXIV Review
        110XXIV(N) Discretion of Lower Court
            110k1156.1 Sentencing
                110k1156.2 k. In General. Most Cited Cases

In analyzing a sentence for substantive reasonableness, Court of Appeals considers the sentence under a deferential abuse-of-discretion standard, whereby the Court must defer to the trial court and can reverse a sentence only if it is unreasonable, even if the sentence would not have been the choice of the appellate court.

**[13] Criminal Law 110 🗝1144.17**

110 Criminal Law
    110XXIV Review
        110XXIV(M) Presumptions
            110k1144 Facts or Proceedings Not Shown by Record
                110k1144.17 k. Judgment, Sentence, and Punishment. Most Cited Cases

Court of Appeals applies a presumption of reasonableness to a sentence within or below a properly calculated guidelines range. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Benson Everett Legg, Senior District Judge. (1:10–cr–00780–BEL–1).

Before KEENAN and FLOYD, Circuit Judges, and HENRY E. HUDSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge KEENAN wrote the opinion, in which Judge FLOYD and Judge HUDSON joined.

**ARGUED:** Paula Xinis, Murphy, Falcon & Murphy, Baltimore, Maryland, for Appellant. Sujit Raman, Office of the United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Kenneth W. Ravenell, Milin Chun, Murphy, Falcon & Murphy, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

**\*1** Defendant Yooho Weon pleaded guilty to five counts of tax evasion, in violation of 26 U.S.C. § 7201, pursuant to a plea agreement reached with the government. The district court sentenced Weon to a prison term of 30 months, a sentence below Weon's advisory Sentencing Guidelines (the guidelines) range of 33 to 41 months' imprisonment.

On appeal, Weon argues that the sentence imposed by the district court was both procedurally and substantively unreasonable. Weon contends that the

--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

actual tax revenue loss caused by his failure to pay corporate income taxes was significantly less than the amount stated in the parties' plea agreement, and that the court erred in refusing to consider this alleged discrepancy at his sentencing. Upon our review, we conclude that the district court did not err in holding that Weon was bound by the tax revenue loss figure to which he stipulated in the plea agreement, and that the court did not commit procedural or substantive error in sentencing Weon. Accordingly, we affirm the district court's judgment.

I.

Weon owned and operated Parkway Pawn Shop, Inc. (Parkway), located in Bladensburg, Maryland, and an internet-based business known as Earth 1 Computer, Inc. (Earth 1). Weon operated these companies as a single business enterprise, maintaining their books and records as one entity.

The government filed a criminal information charging Weon with five counts of willfully evading corporate income taxes, alleging that Weon failed to file a corporate income tax return for Parkway and Earth 1 for the calendar years 2004 through 2008. Weon waived indictment and entered into a written plea agreement in which he admitted all the charges and agreed to plead guilty to them.

In the plea agreement, the parties stipulated that "for purposes of this plea agreement *and sentencing,* the total tax loss is approximately $2,400,000." (Emphasis added.) The $2,400,000 figure represented a compromise amount determined by the parties. The government initially maintained that the tax revenue loss was more than $2,500,000, which would have resulted in a greater offense level under the guidelines. Weon, however, claimed that the tax revenue loss was much lower than $2,400,000. Significantly, during this plea bargaining process, Weon received advice from a certified public accountant (CPA) he had hired to evaluate the amount of the loss before entering into the plea agreement.

In addition to the government's agreement to forego any argument that the tax revenue loss exceeded $2,500,000, Weon obtained other significant benefits by entering into the plea agreement. The government stipulated in the agreement that Weon's base offense level under the guidelines was 22, and agreed not to oppose a two-level reduction in the offense level based on Weon's acceptance of responsibility. The government also agreed to file a motion under U.S.S.G. § 3E1.1(b) for an additional one-level reduction in his offense level, lowering the adjusted offense level to 19, based on certain conditions including that Weon would not attempt to withdraw his guilty plea.

*2 By pleading guilty, Weon avoided being charged with the additional felony offenses of transporting stolen property and of participating in a money laundering conspiracy, offenses for which several other owners and employees of Baltimore-area pawn shops had been prosecuted. As a result of his plea, Weon also avoided being charged by Maryland state authorities with the felony offense of engaging in the trafficking of stolen goods.

The district court held a hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure (the Rule 11 hearing), during which the court determined that Weon's guilty plea was entered knowingly and voluntarily. The parties represented at the Rule 11 hearing that the amount of tax revenue loss "we have agreed to regarding this plea agreement and sentencing is approximately $2.4 million," but noted that the figure was subject to change for restitution purposes only depending on the result of an anticipated civil agreement between Weon and the Internal Revenue Service (IRS). In response to the district court's questions, Weon further confirmed under oath that he had reviewed the factual stipulations in the plea agreement, that he did not wish to change any aspect of those stipulated facts, that those facts were true and correct, and that the government could prove those

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

facts had **Weon's** case proceeded to trial.

After the Rule 11 hearing, **Weon** obtained a postponement of his sentencing hearing for a period of more than six months. Two weeks before the rescheduled hearing, **Weon** informed government counsel that **Weon** only recently had learned that the amount of tax revenue loss was actually around $40,000, rather than the $2,400,000 figure to which the parties earlier had stipulated. Among other reasons offered to explain this discrepancy, **Weon** contended that Parkway and Earth 1 were separate businesses, rather than the single entity described in the parties' plea agreement.

**Weon** advanced this argument in his sentencing memorandum filed with the district court. The court issued an order further delaying the sentencing hearing, and directed **Weon** to produce the report of Jeffrey Barsky, **Weon's** new forensic accountant. The court also ordered that **Weon** make Barsky available for a deposition before the sentencing hearing.

Two weeks later, the district court held that **Weon** was bound by his stipulation in the plea agreement concerning the tax revenue loss, for purposes of both his advisory guidelines range and the court's consideration of the sentencing factors in 18 U.S.C. § 3553(a). In reaching this conclusion, the district court observed that Weon had represented under oath during the Rule 11 hearing that the statements in the plea agreement were correct. Accordingly, the court prohibited Weon's counsel from arguing during the sentencing hearing that the tax revenue loss was materially less than $2,400,000, including for purposes of the § 3553(a) factors. Nevertheless, the court stated that it would permit Weon to move to withdraw his plea at a later date if he could demonstrate that the discrepancy in the revenue loss calculations resulted from a "mistaken assumption of facts."

**\*3** In response, Weon filed a motion seeking to withdraw his guilty plea in which he argued, among other things, that the plea was not knowing and voluntary because he entered it under the mistaken belief that the tax revenue loss figure of $2,400,000 was accurate. Weon further argued that the recently completed "full defense forensic accounting analysis" conducted by Barsky established that the tax revenue loss was "in the $40,000 range."

The government opposed Weon's motion to withdraw, arguing that Weon had entered into the plea agreement knowingly and voluntarily. The government also disputed Barsky's analysis on its merits, offering an affidavit from Bradley Whites, a former IRS special agent with over 20 years' experience.

The district court held a hearing on **Weon's** motion during which the court heard argument and considered the evidence of record, including Whites' affidavit and Barsky's report and deposition testimony. At the conclusion of the hearing, the court denied **Weon's** motion, stating that **Weon** had entered his guilty plea voluntarily.

In denying the motion, the district court further observed that **Weon** had stipulated in the plea agreement to a tax revenue loss of $2,400,000 after receiving advice from a CPA, despite **Weon's** disagreement concerning that amount. The court also stated that it found Barsky's report and testimony concerning the purported lower loss figure "highly unpersuasive and riddled with holes." Finally, the court concluded that **Weon's** request to withdraw from the plea agreement was "tactical [and] not based upon an honest mistake," and that allowing him to withdraw would result in prejudice to the government.

Following its ruling on the motion to withdraw, the district court conducted Weon's sentencing hearing. At that time, the government declined to file a motion for an additional one-level decrease in offense level because Weon had sought to withdraw his

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

guilty plea.

The district court otherwise adopted the presentence report, which incorporated the stipulations in the plea agreement that the base offense level was 22, and that Weon was entitled to a two-level reduction for acceptance of responsibility. The court found that Weon's guidelines range was 33 to 41 months' imprisonment based on an adjusted offense level of 20 and a criminal history category of I. Nevertheless, the court stated that it would base its sentence on an adjusted offense level of 19 as contemplated in the plea agreement, resulting in a guidelines range of 30 to 37 months' imprisonment.

The district court considered the sentencing factors set forth in § 3553(a) but, based on its earlier ruling, refused to consider any evidence or argument that the tax revenue loss was materially lower than $2,400,000. After receiving testimony from Weon's other witnesses and hearing argument from the parties, the court imposed concurrent sentences of 30 months' imprisonment on each of the five counts, a sentence below the guidelines range found by the court and at the bottom of the range applicable to an adjusted offense level of 19. The court declined to impose a more lenient sentence in view of Weon's previous conviction for selling about $46,000 worth of counterfeit computer accessories to an undercover FBI agent, as well as the seriousness of Weon's present offenses. Weon timely filed a notice of appeal.

II.

**\*4** [1] Initially, we address the government's argument that Weon waived his right to appeal under the terms of the appellate waiver provision in the plea agreement. That provision stated, in relevant part, that the parties agreed to waive all rights to appeal the sentence imposed by the district court, but that Weon "reserve[d] the right to appeal from any sentence *above* the advisory guidelines range *resulting from an adjusted base offense level of 19.*" (Emphasis added.)

[2][3][4][5] A defendant's waiver of his right to appeal a conviction or sentence is valid and enforceable if such waiver was knowingly and intelligently made. United States v. Blick, 408 F.3d 162, 168–71 (4th Cir.2005). In determining whether an appellate waiver provision bars consideration of the issues raised in a particular appeal, we interpret the terms of the parties' plea agreement in accordance with traditional principles of contract law. United States v. Davis, 714 F.3d 809, 814 (4th Cir.2013); United States v. Harvey, 791 F.2d 294, 300 (4th Cir.1986). Because appellate waiver provisions usually are drafted by the government, and because such provisions implicate a defendant's constitutional rights, we hold the government to a "greater degree of responsibility" for any ambiguities than the defendant, or even than the drafter of a provision of a commercial contract. Davis, 714 F.3d at 814–15 (citation omitted); Harvey, 791 F.2d at 300–01. Accordingly, we will enforce an appellate waiver provision against a defendant only if that provision is clearly and unambiguously applicable to the issues raised by the defendant on appeal.

In the present case, we conclude that the language of the appellate waiver provision cannot be termed unambiguous when considered in the context of the district court's finding that the adjusted base offense level was 20 rather than 19. Based on the waiver provision's explicit reservation of Weon's right to appeal from any sentence above the "advisory guidelines range resulting from an adjusted base offense level of 19," Weon has a colorable argument that the provision is ambiguous as applied to him. Given the heightened standard that we apply to the interpretation of an appellate waiver provision entered into by a criminal defendant, we will not construe the waiver provision as barring **Weon's** present appeal.

Turning to the merits of this case, we next consider **Weon's** challenges regarding the procedural and substantive reasonableness of his sentence. We

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

first address **Weon's** argument that the district court's imposition of a 30–month sentence was procedurally unreasonable. **Weon** asserts that the district court was required in its consideration of the § 3553(a) factors to consider **Weon's** proffered evidence that the tax revenue loss amount of $2,400,000 was incorrect. We disagree with **Weon's** argument.

[6][7] We review a district court's imposition of a sentence, "whether inside, just outside, or significantly outside the Guidelines range[,] under a deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). In considering a challenge to the procedural reasonableness of a sentence, we must assess, among other things, whether the district court considered the 18 U.S.C. § 3553(a) factors and analyzed the arguments presented by the parties. Id. at 46–47.

**\*5** [8][9] In interpreting the terms of a plea agreement in conformity with principles of general contract law, we apply the plain meaning of the agreement's terms with the goal of providing each party the benefit of its bargain. United States v. Jordan, 509 F.3d 191, 195 (4th Cir.2007). When a term in a plea agreement is unambiguous, neither party will be permitted "unilaterally to renege or seek modification simply because of uninduced mistake or change of mind." Harvey, 791 F.2d at 300.

The decisions of our sister circuits are in accord with this view that, absent a successful withdrawal from a plea agreement or other very exceptional circumstances, a defendant remains bound by the factual stipulations in his plea agreement once the plea has been accepted by the district court. See, e.g., United States v. Teeter, 257 F.3d 14, 28 (1st Cir.2001) (a court's acceptance of a factual stipulation in a plea agreement "firm[ly]" binds the parties to that stipulation, because "the defendant knows what she has done, and has little cause for complaint if the district court takes her at her word"); United States v. Granik, 386 F.3d 404, 411–13 (2d Cir.2004) (discussed below); United States v. Williams, 510 F.3d 416, 422 (3d Cir.2007) ("When a defendant stipulates to a point in a plea agreement, he 'is not in a position to make. arguments [to the contrary].' ") (alteration in original) (citation omitted); United States v. Porretta, 116 F.3d 296, 301 (7th Cir.1997) ("Absent any compelling basis for disregarding the [plea agreement] admissions, they must stand.").

We observe that the Second Circuit addressed a similar issue in *United States v. Granik,* in which the defendant sought to avoid at sentencing the consequences of his plea stipulation of a certain loss amount resulting from his criminal activity. 386 F.3d at 410–14. In rejecting the defendant's argument that the loss amount was less than the amount to which he had stipulated earlier, the court stated that "a stipulation as to the amount of loss in a plea agreement that is knowing and voluntary will generally govern the resolution of that issue," and will bind the parties from contesting the substance of that stipulation. Id. at 411–12. The Second Circuit further explained that factual stipulations in plea agreements "are bargaining chips in the hands of defendants," and that "[i]f defendants are not held to their factual stipulations ... the government has no reason to make concessions in exchange for them." Id. at 412–13.

[10] Here, we have little difficulty in concluding that Weon's attempts to argue that the tax revenue loss was materially less than $2,400,000 constituted a "unilateral reneging" on the basis of "uninduced mistake or change of mind," Harvey, 791 F.2d at 300, and that the district court was well within its discretionary authority to hold Weon to the loss amount stipulated in the plea agreement. Weon's plea agreement expressly provided that "for purposes of this plea agreement *and sentencing,* the total tax loss is approximately $2,400,000." (Emphasis added.) Moreover, we observe that Weon stated under oath during the Rule 11 hearing that the factual stipulations in the agreement were true and correct. Thus, those factual stipulations remained binding in the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

absence of any demonstrated exceptional circumstances. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir.1992) (defendants are generally bound to representations made under oath during a Rule 11 plea colloquy).

**\*6** Contrary to Weon's argument, the plea agreement stipulation setting the tax revenue loss at around $2,400,000 applies under its plain terms for purposes of "sentencing." The stipulation thus encompasses the amount of tax revenue loss both for the district court's calculation of Weon's guidelines range and for the court's consideration of the sentencing factors set forth in § 3553(a). Accordingly, to the extent that the court refused to consider Weon's argument about the amount of tax revenue loss for purposes of § 3553(a), that result clearly was contemplated by the parties and formed part of their bargain as reflected in the plea agreement.

Weon argues, nevertheless, that the plea agreement allowed him to contest the tax revenue loss amount for purposes of § 3553(a). In making this contention, Weon relies on provisions of the plea agreement that as a general matter: (1) permit him "to seek a reduction in sentence under any Section 3553(a) factor"; and (2) reserve to the parties the right to bring to the district court's attention during sentencing "all relevant information concerning [Weon's] background, character, and conduct." We are not persuaded by this argument.

The provisions of the plea agreement on which Weon relies are broad and general, and do not relate directly to the stipulated tax revenue loss. In contrast, the plea agreement explicitly provides that the tax revenue loss is approximately $2,400,000 for purposes of both the plea agreement and Weon's sentencing. To the extent that there is any conflict between the very general provisions recited above and the explicit stipulation regarding the tax revenue loss, we apply under basic contract law principles the more specific provision fixing the amount of the tax revenue loss.

See PCS Nitrogen Inc. v. Ashley II of Charleston LLC, 714 F.3d 161, 174 (4th Cir.2013) (citation omitted) (the specific provisions of a contract control over potentially conflicting general provisions).

We further observe that Weon does not challenge on appeal the district court's denial of his motion to withdraw from the plea agreement or the court's finding that Weon knowingly and voluntarily entered into the agreement, including the factual stipulations contained therein. We note that Weon would have faced a formidable challenge had he raised such an argument before us, because he contested the amount of tax revenue loss with the assistance of counsel and a CPA during the plea bargaining process before ultimately agreeing to the $2,400,000 figure. Moreover, we observe that the district court's repudiation of Barsky's tax loss analysis as "highly unpersuasive and riddled with holes" would be entitled to significant deference on appeal. See United States v. Chase, 466 F.3d 310, 314 (4th Cir.2006) (district court's findings of fact reviewed for clear error).

Accordingly, we hold that the district court did not abuse its discretion in prohibiting Weon from arguing that the tax revenue loss was materially lower than $2,400,000, because Weon knowingly and voluntarily stipulated to that amount in his plea agreement. Thus, we reject Weon's argument that the district court committed procedural error in its sentencing determination.

**\*7** [11][12][13] Finally, we address Weon's argument that the 30–month sentence imposed by the district court, which was below Weon's guidelines range, was substantively unreasonable. In analyzing a sentence for substantive reasonableness, we consider the sentence under a deferential abuse-of-discretion standard, whereby we "must defer to the trial court and can reverse a sentence only if it is unreasonable, even if the sentence would not have been the choice of the appellate court." United States v. Evans, 526 F.3d 155, 160 (4th Cir.2008) (emphasis omitted). We

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))
**(Cite as: 2013 WL 3722362 (C.A.4 (Md.)))**

apply a presumption of reasonableness to a sentence within or below a properly calculated guidelines range. *United States v. Susi,* 674 F.3d 278, 289 (4th Cir.2012).

As the district court observed during the sentencing hearing, Weon previously had been convicted of selling to an undercover FBI agent counterfeit computer accessories having a retail value of around $46,700. The district court also discussed the seriousness of Weon's present tax offenses, noting that this was not a case in which there were unreported "small shaving[s]," but rather that "millions and millions of dollars of income were not reported to the [IRS]." After reviewing the record and the parties' arguments, we conclude that Weon's below-guidelines sentence of 30 months' imprisonment is not substantively unreasonable.

### III.

For these reasons, we affirm the district court's judgment.

*AFIRMED*

C.A.4 (Md.),2013.
U.S. v. Yooho Weon
--- F.3d ----, 2013 WL 3722362 (C.A.4 (Md.))

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.