# ATTACHMENT A
## STATEMENT OF FACTS: KIRK YAMATANI

*The United States and the Defendant agree that if this case proceeded to trial, the United States would prove the following facts below beyond a reasonable doubt. The parties agree that these are not all of the facts that would have been proved if this case proceeded to trial.*

Defendant **KIRK YAMATANI ("YAMATANI")** was a Special Agent of the United States Department of Commerce ("DOC"), Office of the Inspector General ("OIG"), from August 1998 through February 2013. In this role, he was covered by the United States Office of Personnel Management's series 1811, which sets forth requirements for positions that supervise, lead, or perform work involving the planning, conducting, or managing of investigations related to violations of federal criminal laws. Work in this series requires knowledge of criminal investigative techniques, rules of criminal procedures, laws, and precedent court decisions concerning the admissibility of evidence, constitutional rights, search and seizure, and related issues in the conduct of investigations.

**YAMATANI**'s first duty station was in Washington, D.C. In 2006, he transferred to the DOC OIG office in Atlanta, Georgia. In 2009, he returned to Washington, D.C. where he continued to work for DOC OIG. During and after this change of station from Georgia to Washington, D.C., **YAMATANI** submitted false writings and made material misrepresentations to the DOC regarding payments for travel expenses, time and attendance.

OIG had a policy from September 2008 through May 2011, and a new policy beginning in June 2011. In both cases, **YAMATANI** was permitted to telework if he received advance written approval from his supervisor. Pursuant to the policy and agreements, **YAMATANI** was permitted to telework from his house, provided his residence qualified. In the June 2011 agreement, **YAMATANI** had to provide specific information about his residence in order to telework from his residence. **YAMATANI** listed his residence, and only his residence, on the agreement. In order to telework from a location other than his pre-approved residence, **YAMATANI** was required to seek and obtain prior written authorization to telework from a specific location. **YAMATANI** never sought permission to telework from anywhere other than his pre-approved residence. Furthermore, **YAMATANI** was under an "episodic" policy that required permission to telework for each "episode," requiring not only approval to telework on each episode but also additional information about the location if it was not his pre-approved residence. **YAMATANI** never sought or obtained permission to telework from a location other than his pre-approved residence.

On February 25, 2011, **YAMATANI** knowingly certified his time and attendance record and submitted it to the DOC OIG and National Institute of Standards and Technology Office of Financial Resource Management in Gaithersburg, Maryland, which processed DOC OIG's financial claims. In that submission, **YAMATANI** falsely certified that he had been in a duty status during the entire covered 9-day work period, when in fact he had been in New York City and absent from his duty station without leave or approved travel orders from February 22-25, 2011.

Further, **YAMATANI** falsely stated on several occasions via bi-weekly Time and Allowance certifications that he had been working when, in fact, he had not been and had no permission to telework from locations other than his residence. Based on contemporaneous records and emails, **YAMATANI** claimed to have been working on the following dates when, in fact, he was not:

June 14, 2010;
August 10, 2010;
September 15-17, 2010;
October 5, 2010;
November 8-9, 2010;
November 29-30, 2010;
December 27-29, 2010;
March 3-7, 2011;
March 24, 2011;
April 4-5, 2011;
May 4, 2011;
June 14-16, 2011;
July 13-14, 2011;
February 14-17, 2012;
February 23-27, 2012;

On these dates, **YAMATANI** was neither at his home nor in a pre-approved location. **YAMATANI**'s position as an investigative special agent with significant discretion and relatively low direct supervision of his day-to-day activities made the detection of this offense more difficult. The actual losses to the United States that was the direct and proximate result of **YAMATANI**'s knowing and intentional conduct was $11,150.21.

I have read this statement of facts, and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

5/13/14
Date

Kirk Yamatani

I am Kirk Yamatani's attorney. I have carefully reviewed the statement of facts with him.

13 may 2014
Date

Steve Levin, Esq.

9